IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH D. ANTONELLA,                )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Civil Action No. 03-1753
                                    )
PORT AUTHORITY OF ALLEGHENY         )
COUNTY, ROBYN GRAY,                 )
PAUL SKOUTELAS, MAUREEN BERTOCCI,   )
T. KOMOROSKI, and                   )
WILLIAM T. McARDLE,                 )
                                    )
            Defendants.             )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

      It is respectfully recommended that the motion for
summary judgment submitted on behalf of Port Authority of
Allegheny County (Docket No. 16) be granted.

II.  REPORT

      Presently before this Court for disposition is a motion
for summary judgment brought by defendant Port Authority of
Allegheny County ("Port Authority").

      Plaintiff, Joseph D. Antonella ("Antonella"), commenced
this action under 42 U.S.C. § 1983, after defendant terminated
his employment in November of 2002.

      According to the complaint, plaintiff was employed by
Port Authority for approximately nine years and, at the time of
his termination, was a "Movement Director" responsible for

ensuring that traffic was moving on schedule and to warn transit operators of potential problems along their routes.[1]  On September 5, 2001, while allegedly looking for computerized information that would "allow him to have more ready access to job-related materials for the performance of his job," plaintiff accessed a spreadsheet that listed all Port Authority employees and certain private information including their social security numbers.[2]  Plaintiff alleges that in an effort to work more efficiently he e-mailed the spread sheet to his home and to another Port Authority employee, Kurt Weisbecker.[3]

Plaintiff contends that on November 15, 2002, after he had been given a new non-union job as Assistant Manager of Road Operations, we was called into work on a scheduled day off, was questioned by defendant Gray about the spreadsheet and, without apparent reason, terminated from employment.[4]  As well, it appears that a search warrant was executed at plaintiff's home on that same date by the Port Authority Police and Security Services Department and a McKeesport police officer, during which plaintiff's personal computer, financial records, "other computer

---

[1]Complaint ¶ 13 (Docket No. 1).

[2]Complaint ¶ 14.

[3]Complaint ¶ 15.

[4]Complaint ¶¶ 16, 17.

2

related devices," and plaintiff's personal firearms were taken.[5]
Plaintiff alleges that the affidavit of probable cause which
formed the basis for the warrant and which was signed by
defendant Komoroski, was false and executed for the purpose of
conducting an illegal search and seizure of his personal property
and to support his wrongful discharge from employment.[6]
Moreover, plaintiff contends that the seizure of his firearms
exceeded the scope of the warrant and that despite the fact that
the affidavit of probable cause indicated he was going to be
charged with theft, criminal intent (identity theft) and unlawful
use of a computer, no such charges have been filed.[7]

Plaintiff also complains that defendants Gray and
Skoutelas released information to other employees at Port
Authority and to the news media which, although plaintiff's name
was not mentioned, paints him as a computer hacker attempting to
engage in the crime of identity theft for his own personal
financial gain.[8]

Finally, plaintiff alleges that the spreadsheet in
question was readily accessible by anyone working within the Port
Authority's computer system which was the fault of the Port

---

[5]Complaint ¶¶ 19-20.

[6]Complaint ¶ 19.

[7]Complaint ¶¶ 19-21.

[8]Complaint ¶ 23.

Authority, defendant Bertocci and defendant Skoutelas and that all named defendants conspired against him to use him as a scapegoat in order to coverup their own failure to protect employees' private information.[9]

Port Authority has submitted a Statement of Material Facts ("SMF") in support of the instant motion in which it contends that although plaintiff had access to computer information regarding the home addresses of operators the only information necessary for plaintiff to perform his duties as a Movement Director was that regarding maintenance of the transportation system.[10]  As well, it appears that the Port Authority's Electronic Mail and Internet Policy, which plaintiff was aware of, provided that unauthorized copying of electronic mail and/or proprietary files and sending or posting confidential material to non-authorized personnel were cause for discipline, including discharge.[11]  It also appears that Port Authority employees receive a notice each time they log onto their computers that unauthorized or improper use of the system may

_____

[9]Complaint ¶ 24.

[10]SMF ¶¶ 9-12 (Docket No. 17).  We note here that although Port Authority has cited to plaintiff's deposition testimony as well as the declarations of defendants Robyn Gray and T. Komoroski to support its statement of material facts, only a photocopy of Ms. Gray's declaration has been submitted to the Court.  Plaintiff, however, has not disputed any of the representations made by the Port Authority.

[11]SMF ¶¶ 18, 19.

4

result in disciplinary action and civil and criminal penalties.[12]
Port Authority also contends that despite plaintiff's assertion
that he e-mailed the file to his home so that he could perform
his job more efficiently he conceded that he never utilized the
data to perform any authorized work.[13]

In addition, Port Authority contends that its IT
Department discovered that plaintiff had e-mailed the
confidential file to himself and Mr. Weisbecker in violation of
its e-mail and internet policy after plaintiff reported having
problems with his computer.[14]  Plaintiff was subsequently
terminated and, concerned that the information contained in the
files may have been used illegally, the Port Authority contacted
the police.[15]  Plaintiff refused to cooperate, however, and after
contacting the District Attorney's office Detectives Jordan and
Komoroski sought a warrant to search plaintiff's residence.[16]
The warrant application, which listed theft, criminal attempt of
identity theft and unlawful use of a computer as potential
crimes, asked for permission to search and seize information and
evidence of:

---

[12]SMF ¶ 20.

[13]SMF ¶¶ 22, 23.

[14]SMF ¶ 25.

[15]SMF ¶¶ 33, 34.

[16]SMF ¶¶ 35-37.

> [a]ny and all records maintained as
> subscriber information pursuant to Title 18
> U.S.C. § 2703(d), including but not limited
> to subscriber's name address social security
> number, beginning and ending dates of
> service, activity logs (transaction records
> authorized number identification (ANI)
> history, billing and credit information, any
> and all primary and secondary logins, and
> prior complains concerning the screen name,
> jda@telerama.com.  Also any messages sent or
> received with the file PAYNAMES1.xis[.][17]

The warrant was subsequently signed by District Justice Sally A.
Edkins and executed by defendant Komoroski, Detective Jordan and
officers from the McKeesport Police Department during which three
computers, a monitor, printer, disks, receipts, and a brief case
were seized.[18]  Port Authority has also represented, and
plaintiff does not dispute, that for their own protection and
plaintiff's personal safety the officers seized four firearms
"for a cooling off period."[19]  The confidential file was
apparently discovered on plaintiff's computer and after the
investigation was concluded, all of plaintiff's property was
returned to him.[20]

        Following plaintiff's discharge, defendant Paul
Skoutelas, Chief Executive Officer of Port Authority, issued a

---

[17]SMF ¶¶ 37-39.

[18]SMF ¶¶ 40, 41.

[19]SMF ¶ 42.

[20]SMF ¶¶ 45, 46.  It also appears that a similar warrant was
executed at Mr. Weisbecker's residence.  SMF ¶¶ 43, 44.

memorandum to all Port Authority employees and retirees in which
he reiterated Port Authority's policy regarding the misuse of
computer equipment and confidential company information.
Employees were also advised that the company was investigating an
incident where social security numbers were copied and forwarded
to other Port Authority employees and that they should contact
their credit agencies if they believed that their social security
number had been used improperly.[21]  It also appears that a local
newspaper article indicated that Port Authority was searching
various computers to determine whether confidential personnel
files had been downloaded.  Neither the article nor Mr.
Skoutelas' memorandum, however, made any reference to plaintiff
or used his name.[22]

      Plaintiff filed a complaint on November 14, 2003,
bringing claims pursuant to § 1983 for illegal search and seizure
in violation of the Fourth Amendment (Count I) and deprivation of
constitutionally protected property rights in violation of the
Fourteenth Amendment (Count II).  As well, plaintiff has brought
state law claims for invasion of privacy rights (Count III),
defamation (Count IV) and wrongful discharge (Count V).

      Port Authority filed the instant motion on March 18,
2005, and on July 12, 2005, plaintiff filed a response to the

---

[21]SMF ¶¶ 47-49.

[22]SMF ¶¶ 50-52.

7

motion that consisted of six enumerated paragraphs in which he
merely admitted or denied the assertions set forth in defendant's
motion without presenting any argument or citing to any
authority.  Consequently, on September 8, 2005, the Court issued
a briefing schedule directing plaintiff to file a supporting
brief on or before October 10, 2005.  On October 24, 2005,
plaintiff sought an extension of time asking until October 28,
2005, within which to file a brief.  The motion was granted, as
was at least one other verbal request for additional time, but
plaintiff again failed to comply with the due date.  As a result,
on November 9, 2005, the Court issued an order directing
plaintiff to file a responsive brief on or before November 14,
2005, and advising plaintiff that no further extensions would be
granted and that failure to file a responsive brief in a timely
manner would be interpreted as his having conceded the that the
motion was properly granted.[23]  To date, plaintiff has failed to
file a responsive brief or otherwise suggested to the Court why
the Port Authority's motion should not be granted.  It therefore
appears that plaintiff has conceded to its being granting.
Indeed, plaintiff's failure to produce any evidence to support

---

[23]We note here that two other motions for summary judgment filed
by other defendants were also pending and were the subject of the
Court's order.  On November 15, 2005, plaintiff filed a motion in
which he conceded that the motions as to those defendants should be
granted and requested that they be dismissed from the suit.  See
Docket No. 35.  At such time as that motion is granted the Port
Authority and defendant T. Komoroski will be the only defendants
remaining in the case.

his claims suggests that Port Authority is entitled to judgment as a matter of law.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require

9

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Here, plaintiff is proceeding under § 1983 which makes it unlawful for a public entity to deprive an individual of any rights or privileges secured by the Constitution or laws of the United States.[24]  Thus, to establish a claim under § 1983, the plaintiff must prove that the defendants deprived him of a right secured by the Constitution or the laws of the United States while acting under color of state law.  Shuman ex rel. Shertzer v. Penn Manor School District, 422 F.3d 141, 146 (3d Cir. 2005).

In addition, the United States Supreme Court has held that in order to state a valid claim against a municipality or local governing body under § 1983, a plaintiff must allege that a deprivation of his or her constitutional rights occurred in the execution of the government's policy or custom.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d

---

[24]Specifically, 42 U.S.C. S 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Cir. 2003).  See Commissioners of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997)(Finding that liability under § 1983 may only be imposed on municipalities for their own illegal acts thereby requiring a plaintiff to identify a municipal policy or custom that caused the plaintiff's injury.)

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Commissioners of Bryan County v. Brown, supra (citations omitted).

Here, although plaintiff has alleged that he was subjected to an unlawful search and seizure in violation of the Fourth Amendment and deprived of his property in violation of the Fourteenth Amendment he has not alleged that Port Authority was acting under color of state law or pursuant to a policy or custom and, more importantly, has not produced any evidence from which a fact finder could conclude that a custom or policy with respect to unconstitutional searches and seizures existed or that Port Authority was acting accordingly.  Thus, it appears that

plaintiff is unable to succeed on his claims brought under § 1983 and Port Authority's motion in this regard is properly granted.[25]

Having found that plaintiff is unable to sustain his § 1983 claims it appears that only the state law claims for invasion of privacy, defamation and wrongful discharge remain. Where all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over the remaining claims.  28 U.S.C. § 1367(c)(3).  Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that absent extraordinary circumstances the Court should decline to exercise pendent jurisdiction where the federal claims are no longer viable. Bright v. Westmoreland Co., 380 F.3d 729, 751 (3d Cir. 2004). Because there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over plaintiff's state law claims it appears that these claims are properly dismissed.

For these reasons it is recommended that the motion for summary judgment submitted on behalf of Port Authority of Allegheny County (Docket No. 16) be granted.

---

[25]We note here that plaintiff's only response to Port Authority's argument in this regard is that "The Port Authority's information formed the basis for the false information contained in the search warrant."  See Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 4 (Docket No. 19).  This is not only unresponsive to defendant's argument but does not speak to the existence of a custom or policy at all.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,


/s/   Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   30 November, 2005.


cc:  Daniel J. Iler, Esquire
     591 East Maiden Street
     Washington, PA 15301

     Terrance R. Henne, Esquire
     Port Authority of Allegheny County
     345 Sixth Avenue, Third Floor
     Pittsburgh, PA 15222-2527

     Christine M. Gass, Esquire
     William L. Doepken, Esquire
     Eckert, Seamans, Cherin & Mellott
     600 Grant Street
     44th Floor
     Pittsburgh, PA 15219

     Albert G. Feczko, Jr., Esquire
     Feczko & Seymour
     520 Grant Building
     Pittsburgh, PA 15219-2201