IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH D. ANTONELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 03-1753 |
| | ) |
| PORT AUTHORITY OF ALLEGHENY | ) |
| COUNTY, ROBYN GRAY, | ) |
| PAUL SKOUTELAS, MAUREEN BERTOCCI, | ) |
| T. KOMOROSKI, and | ) |
| WILLIAM T. McARDLE, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motion for summary judgment submitted on behalf of defendant T. Komoroski (Dkt. No. 42) be granted.

II.   REPORT

Plaintiff, Joseph D. Antonella, commenced this action against the above-named defendants, including T. Komoroski ("Komoroski"), after his employment with the Port Authority of Allegheny County ("Port Authority") was terminated in November of 2002.

The following facts are undisputed. Plaintiff was employed by Port Authority for approximately nine years, first as a "Movement Director," responsible for monitoring the service levels relating to the Port Authority's light rail system, and

then, as of February 2002, as an Assistant Manager of Road Operations.[1]  In order to perform his duties, plaintiff was provided with books containing the names and other private information of all Port Authority employees.  Plaintiff was also able to access information regarding the home addresses of operators from Port Authority's computer system although the only computerized information he needed to do his job was that concerning maintenance of the transportation system.[2]  Nevertheless, on September 5, 2001, plaintiff accessed and e-mailed to himself and another Port Authority employee, Kurt Weisbecker, a large data file containing confidential information on employees including their names, addresses, dates of birth, social security numbers and payroll numbers, in violation of Port Authority's electronic mail and internet policy -- a policy of which plaintiff admitted he was aware.[3]

Concerned that the information may have been used illegally, the Port Authority subsequently asked the Port

---

[1] See Defendant's Statement of Material Facts, ¶¶ 2-4, 7; Plaintiff's Counter Statement of Material Facts, ¶¶ 2-4, 7.  The Court notes that Komoroski has incorporated the exhibits previously filed in conjunction with the Port Authority's motion for summary judgment rather than reproduce them here.  See Dkt. No. 43-2.  Thus, the pages of plaintiff's deposition transcript and the Declaration of Robyn Gray to which Komoroski presently refers appear at Dkt. No. 22 and Komoroski's Declaration appears at Dkt. No. 29-2.

[2] See Defendant's Statement of Material Facts, ¶¶ 5, 6; Plaintiff's Counter Statement of Material Facts, ¶¶ 5, 6.

[3] See Defendant's Statement of Material Facts, ¶¶ 8-11, 14; Plaintiff's Counter Statement of Material Facts, ¶¶ 8-11, 14.

Authority police to conduct an investigation.[4]  Port Authority detectives, defendant Komoroski and Lester Jordan, consequently met with plaintiff who, after being read his *Miranda* Rights, refused to cooperate.[5]  The detectives then contacted an Assistant District Attorney from Allegheny County who advised them what potential crimes plaintiff may have committed by the unauthorized access and e-mailing of confidential employee data.[6]  Komoroski subsequently executed an affidavit of probable cause and the detectives obtained a warrant authorizing the search of plaintiff's residence.[7]  The detectives specifically requested the warrant in order to search and seize,

> [a]ny and all records unauthorized as
> subscriber information pursuant to Title 18
> U.S.C. §2703(d), including but not limited to
> subscriber's name, address and Social
> Security Number, beginning and ending date
> of service, activity logs, transaction records
> authorized number identification [ANI] history,
> billing and credit information, and any and all

---

[4] See Defendant's Statement of Material Facts, ¶ 17; Plaintiff's Counter Statement of Material Facts, ¶ 17.

[5] See Defendant's Statement of Material Facts, ¶ 18; Plaintiff's Counter Statement of Material Facts, ¶ 18.

[6] See Defendant's Statement of Material Facts, ¶ 19; Plaintiff's Counter Statement of Material Facts, ¶ 19.

[7] See Defendant's Statement of Material Facts, ¶ 20; Plaintiff's Counter Statement of Material Facts, ¶ 20.  See Pl.'s Exh. 1: affidavit of probable cause.  It should be noted here that Exhibit A to which Mr. Komoroski refers in his declaration -- the application for the search warrant and the affidavit of probable cause -- is not, as stated, attached to his declaration.  It has nevertheless been submitted by plaintiff as Exhibit 1 to his opposition to the instant motion and appears at Dkt. No. 48.

>     primary and secondary user logins, and prior
>     complaints concerning the user name
>     jda@telerama.com.  Also, any messages sent or
>     received with the file PAYNAMES 1.xls.[8]

The warrant application also listed the potential crimes that the Assistant District Attorney advised that plaintiff could be charged with including theft, criminal attempt of identity theft and unlawful use of a computer.[9]  The warrant was issued by District Justice Sally Edkins and subsequently executed by the Port Authority detectives and officers from the McKeesport Police Department, at which time three computers -- one of which contained the confidential file at issue -- a monitor, a printer, computer disks, receipts and a briefcase were removed from plaintiff's residence.[10]  It is also undisputed that four firearms were confiscated for a cooling off period to ensure the

---

[8] See Defendant's Statement of Material Facts, ¶ 21; Plaintiff's Counter Statement of Material Facts, ¶ 21.  Although Komoroski has represented that this language appears in the warrant application and plaintiff has so admitted, review of the application as submitted by plaintiff reveals no such language.  Rather, the application states that the items to be seized are: "[A]ny records of Port Authority employees including the names, social security numbers, addresses, etc. also any financial records that would indicate profit from the sale of Port Authority employee information.  All computer equipment at the listed premises and any computer devices ...."  Pl.'s Exh. 1.  As well, the accompanying affidavit of probable cause states only that the warrant is being requested "to obtain any computer equipment, computer information storage devices, financial records, and other indicia which would reflect any information that would involve the Port Authority and its employees."  Id.

[9] See Defendant's Statement of Material Facts, ¶ 22; Plaintiff's Counter Statement of Material Facts, ¶ 22.

[10] See Defendant's Statement of Material Facts, ¶¶ 23-24, 26; Plaintiff's Counter Statement of Material Facts, ¶¶ 23-24, 26.

officers' protection and plaintiff's personal safety and that all of plaintiff's property was returned to him once the investigation was concluded six months later.[11]

Plaintiff filed a complaint on November 14, 2003, bringing claims pursuant to § 1983 alleging that his house was illegally searched and property illegally seized in violation of the Fourth Amendment (Count I), and that he was deprived of due process in violation of the Fourteenth Amendment (Count II). As well, plaintiff has brought state law claims for invasion of privacy rights (Count III), defamation (Count IV) and wrongful discharge (Count V). With respect to Detective Komoroski, plaintiff has specifically alleged that the affidavit of probable cause which formed the basis for the search warrant and which was signed by Komoroski was false and executed for the purpose of conducting an illegal search and seizure of his property and to support a wrongful discharge from his employment and that the seizure of his firearms exceeded the scope of the warrant.[12]

Motions for summary judgment were subsequently filed by defendants Port Authority, Robyn Gray, Paul Skoutelas, Maureen Bertocci and William T. McArdle, which were granted on January 11, 2006, leaving Komoroski as the sole remaining defendant in

---

[11] See Defendant's Statement of Material Facts, ¶¶ 24, 27; Plaintiff's Counter Statement of Material Facts, ¶¶ 24, 27.

[12] Complaint ¶¶ 19, 20.

this case.[13]  Komoroski has now filed a motion for summary judgment as well.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.Civ. P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Thus, it must be determined "'whether

---

[13]See Dkt. Nos. 16, 23, 25, 36, 37.

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Here, plaintiff is proceeding under § 1983 which makes it unlawful for a public entity to deprive an individual of any rights or privileges secured by the Constitution or laws of the United States.[14]  Thus, to establish a claim under § 1983, the plaintiff must prove that the defendants deprived him of a right secured by the Constitution or the laws of the United States while acting under color of state law.  Shuman ex rel. Shertzer v. Penn Manor School District, 422 F.3d 141, 146 (3d Cir. 2005).

Komoroski initially argues that to the extent plaintiff has brought his claims against him in his official capacity they must fail for the same reasons that his claims against the Port Authority failed.  Plaintiff has not addressed defendant's

---

[14]Specifically, 42 U.S.C. S 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

argument in this regard and, thus, has seemingly conceded the issue.

Indeed, it appears undisputed that a suit brought against a municipal employee in his or her official capacity is the equivalent of bringing an action against the government entity itself.  Smith v. School District of Philadelphia, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000), citing Hafer v. Melo, 502 U.S. 21, 25 (1991).  See Aitchison v. Raffiani, 708 F.2d 96, 100 (3d Cir. 1983).  Because the Court has already determined that plaintiff is unable to establish his claims against the Port Authority having failed to identify a custom or policy pursuant to which the Port Authority was allegedly acting, it follows that plaintiff is also unable to establish in his claims against Komoroski in his official capacity.[15]  See Commissioners of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997) (Municipal liability under § 1983 requires plaintiff to identify a policy or custom that caused his injury.); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  As such, to the extent that plaintiff seeks to hold Komoroski liable for the alleged constitutional deprivations in his official capacity, Komoroski is entitled to summary judgment.

Komoroski also seeks summary judgment on plaintiff's claims brought against him in his individual capacity.

---

[15] See Dkt. Nos. 36, 37.

Specifically, Komoroski argues that plaintiff is unable to prove that he violated the Fourth Amendment as the evidence shows that the search of his residence was authorized by a valid warrant supported by probable cause and authorized by a district justice and that plaintiff is unable to establish that it was based on false information.[16] See United States v. Ward, 131 F.3d 335, 340 (3d Cir. 1997) (A search is reasonable if supported by a valid search warrant supported by probable cause.)

Although plaintiff has acknowledged the issue and pointed out that the mere fact that a magistrate has approved a search warrant application does not render the warrant valid when the application and supporting affidavit are invalid, he has not discussed in what manner the instant application and affidavit are invalid or pointed to any evidence of record which suggests that the search warrant was based on false information or lacked probable cause. Nor does it appear that plaintiff is able to point to any such evidence having failed to dispute the facts which provide the basis for the affidavit of probable cause and the warrant application.[17]

---

[16]The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[17]See generally, Defendant's Statement of Material Facts; Plaintiff's Counter Statement of Material Facts.

Rather, plaintiff argues for the first time that the warrant was invalid because under the Railway and Street Railway Police Act (the "Act"), 22 Pa. C.S. §§ 3301, *et seq.*, the Port Authority police do not share the same general authority of law enforcement as that possessed by the municipal police and are not authorized to seek a warrant or seize property at a private residence.

Initially, the Court notes that plaintiff has not alleged in the complaint that the warrant was invalid because defendant lacked the authority to obtain or execute it but has alleged only that it was based on false information and not supported by probable cause. Although not argued by defendant, to the extent that plaintiff is raising a new theory of recovery, he may not do so at this juncture or in this manner. See Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (A complaint may not be amended by the briefs in opposition to a motion to dismiss.)

This notwithstanding, the Act, which establishes the powers and duties of transportation system police, provides that:

> **(a) General Powers.-** Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

22 Pa. C.S.A. § 3303(a). Thus, under the Act, Port Authority police have both primary or derivative jurisdiction ("in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority"), and extraterritorial authority ("or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business."). Commonwealth v. Firman, 571 Pa. 610, 617, 813 A.2d 643, 647 (2002) ("Firman"). The Pennsylvania Supreme Court, however, has also found that, "by conditioning the grant of extraterritorial jurisdiction on engagement in the discharge of duties in pursuit of transportation system business, the General Assembly intended to require a closer connection between the interests of the transportation system and encounters in which police powers are to be exercised than mere 'on-duty' status of transportation system police on the observation of offenses."[18] Id.

In Firman, the Court found such a connection where the appellant motorist was driving erratically on a public highway causing a Port Authority police officer, who was on route to his patrol assignment, to swerve and brake to avoid a collision. In so finding, the Court opined that because Port Authority

---

[18] The Court notes here that the cases found involving the extraterritorial jurisdiction of Port Authority police typically revolve around the validity of motor vehicle stops occurring outside the officer's primary jurisdiction.

11

personnel and property, i.e., the transportation system officer and the authority vehicle that he was operating, had been placed in jeopardy, there was a sufficient connection to transportation system business to implicate the extraterritorial jurisdiction of Port Authority policemen. Id., 571 Pa. at 618, 813 A.2d at 648. As such, the Court affirmed the Superior Court which had found that the officer possessed the requisite authority to effectuate the appellant's stop and arrest despite the fact that it occurred on a public highway. Id.

In the instant case, like in Firman, it appears that both Port Authority personnel and Port Authority property in the form of confidential employee computer records were in jeopardy, having been taken by plaintiff without authorization and in violation of Port Authority policies. Komoroski's alleged extraterritorial encounter in seeking and executing the warrant to retrieve those records not only appears to bear a close connection to the interests of the Port Authority but appears to have been within the scope of his duties in pursuit of transportation system business. Under these circumstances, it appears Komoroski was acting within his authority thereby rendering the warrant, pursuant to which he effectuated the search of plaintiff's residence, valid. See Commonwealth v. Quaid, 871 A.2d 246, 253 (Pa. Super. 2005) (Finding that, under Firman, the exercise of police authority "elsewhere within this

12

Commonwealth while engaged in the discharge of their duties in pursuit of transportation system business" must bear a close connection to the interests of the transportation entity.)  As such, Komoroski is entitled to summary judgment on plaintiff's Fourth Amendment claim brought at Count I of the Complaint.[19]

Komoroski further argues that he is entitled to summary judgment on plaintiff's claim brought under the Fourteenth Amendment at Count II of the complaint as plaintiff has failed to specifically allege how Komoroski violated his due process rights.[20]  Moreover, Komoroski argues that, to the extent plaintiff's claim is premised on the assertion that the information upon which the warrant was based was false, his due

---

[19]The Court notes here that Komoroski has also argued that he is entitled to summary judgment on plaintiff's claim that he was subjected to an unlawful search and seizure because the police went beyond the scope of the warrant by seizing his personal firearms.  Notably, plaintiff has failed to address this argument at all and, therefore, has seemingly conceded the issue.  Moreover, plaintiff has admitted that the firearms were properly seized as a precautionary measure for the safety of both the officers and plaintiff.  See Defendant's Statement of Material Facts, ¶ 24; Plaintiff's Counter Statement of Material Facts, ¶ 24. See also Leveto v. Lapina, 2000 WL 331902 *12 (W.D. Pa. February 5, 2000), citing Dale v. Bartels, 732 F.2d 278, 284 (2d Cir. 1984)(Finding that a search is properly extended beyond the items named in the warrant where a special reason for the seizure, such as the officer's safety, attaches.)  Under these circumstances, to the extent that plaintiff's Fourth Amendment claim is based on the illegal seizure of items outside the warrant, it appears he is unable to point to evidence which would create an issue for trial and summary judgment is indeed warranted.

[20]The Fourteenth Amendment provides, in pertinent part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV.

process claim fails for the same reasons that his Fourth Amendment claim fails.

In response, plaintiff has, in fact, argued that the deprivation of his property was "the result of what was tantamount to a warrantless search."[21]  As before, however, plaintiff has not discussed in what manner the search warrant was invalid nor pointed to any evidence which would support a finding that it was based on false information or lacked probable cause.  Nor can he, having failed to dispute the facts set forth by Komoroski which provide the basis for the warrant and the affidavit of probable cause.  Moreover, to the extent plaintiff is again suggesting that the warrant is invalid because Komoroski did not have the authority under the Act to obtain or execute it, that argument has already been rejected.

This notwithstanding, it appears that Komoroski is entitled to summary judgment on plaintiff's due process claim because plaintiff had a post-deprivation remedy available to him.

The United States Supreme Court has held that, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

---

[21] See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, p. 4.

available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Pennsylvania Rule of Criminal Procedure 588, in turn, provides that:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa. R. Crim. P. 588(A). It therefore appears that Rule 588 provides plaintiff with a post-deprivation remedy and precludes a finding that the deprivation of his property was violative of his due process rights. See Potts v. Philadelphia, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002) (Finding Rule 588 provided the plaintiff with an adequate post-deprivation remedy.)

Indeed, plaintiff's only response to Komoroski's argument in this regard is that any proceeding he may have initiated under Rule 588 would not have resulted in the return of his property any quicker that the six months he already waited before it was voluntarily returned and that because "those Rules were promulgated in the context of prison 'shakedowns,'" they are somehow inapplicable here.[22]

While it is not clear what rules plaintiff is referring to it appears that both Rule 588 and the rule of law stated in

---

[22] Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, p. 4.

15

Hudson v. Palmer, 468 U.S. at 533, apply to the instant case. Indeed, Potts v. Philadelphia, supra, did not involve a prison shakedown but involved an individual whose gun was seized when the police came to investigate a complaint that he had been shooting a gun out of his window. Id., 224 F. Supp. 2d at 926. The Court nevertheless relied on both the Hudson rule and Pa. R. Crim. P. 588 in determining that the plaintiff had a post-deprivation remedy and that his right to due process had not been violated. Thus, whether or not the Husdon rule was promulgated in the context of a prison shakedown, it is nevertheless applicable here.

Finally, plaintiff has provided no authority for the proposition that where the available post-deprivation remedy may take longer than the aggrieved party would like or longer than it may take before his property is voluntarily returned, the remedy is rendered meaningless and allows him to pursue a due process claim anyway. Moreover, the fact remains that Pennsylvania law provides a post-deprivation remedy which plaintiff failed to take advantage of and that plaintiff's property was nevertheless returned to him. Under these circumstances, it appears that plaintiff is unable to prove that his due process rights were violated and Komoroski is therefore entitled to summary judgment on this claim as well.

Having found that plaintiff is unable to sustain his § 1983 claims it appears that only the state law claims for invasion of privacy, defamation and wrongful discharge remain. Where all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that absent extraordinary circumstances the Court should decline to exercise pendent jurisdiction where the federal claims are no longer viable. Bright v. Westmoreland Co., 380 F.3d 729, 751 (3d Cir. 2004). Because there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over plaintiff's state law claims it appears that these claims are properly dismissed as well.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of defendant T. Komoroski (Docket No. 42) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond

thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                              Respectfully submitted,


                                              /s/   Amy Reynolds Hay
                                              AMY REYNOLDS HAY
                                              United States Magistrate Judge


Dated:    7 September 2006.


cc:   Daniel J. Iler, Esquire
     591 East Maiden Street
     Washington, PA 15301

     Terrance R. Henne, Esquire
     Port Authority of Allegheny County
     345 Sixth Avenue, Third Floor
     Pittsburgh, PA 15222-2527

     Christine M. Gass, Esquire
     William L. Doepken, Esquire
     Eckert, Seamans, Cherin & Mellott
     600 Grant Street
     44th Floor
     Pittsburgh, PA 15219

     Albert G. Feczko, Jr., Esquire
     Feczko & Seymour
     520 Grant Building
     Pittsburgh, PA 15219-2201